UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ALFRED R. FINSTER, | ) |
| *Plaintiff*, | ) Case No. 3:21-cv-133 |
| v. | ) Judge Travis R. McDonough |
| ANDERSON COUNTY DETENTION FACILITY, *et al.*, | ) Magistrate Judge Debra C. Poplin |
| *Defendants*. | ) |

**MEMORANDUM AND ORDER**

Plaintiff, a prisoner housed at the Anderson County Detention Facility ("ACDF"), is proceeding pro se and *in forma pauperis* in a civil rights action under 42 U.S.C. § 1983. Plaintiff's amended complaint is before the Court for screening in compliance with the Prison Litigation Reform Act ("PLRA") (Doc. 6).

I.     SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and sua sponte dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

## II. ALLEGATIONS OF AMENDED COMPLAINT

Plaintiff had bladder cancer approximately a decade ago, and he now wears a urostomy appliance ("UA") to collect urine. (Doc. 6, at 4.) Plaintiff asserts that deputies of ACDF and nurses of its contract medical provider, Southern Health Partners ("SHP"), fail to timely replace his UAs when they begin leaking. (*Id*. at 4.) Plaintiff contends that he has to wait for medical staff to be notified and respond to his request, or, if the failure occurs at night, he has to sit or lie in urine-soaked clothes until a nurse comes on duty the following morning. (*Id*. at 4–5.)

Plaintiff claims that from January 2021 through mid-March 2021, SHP was providing an inferior UA for Plaintiff's medical needs, which caused him to need a new one every two or three days. (*Id*. at 5.) During this time, Nurse Lawson told Plaintiff he would be limited to one

2

UA per week. (*Id*. at 6.) Sergeant Hartsfield and Nurses Artz, Hison, and Lawson accused Plaintiff of causing the UA to fail by not properly maintaining it. (*Id*. at 5.)

On September 13, 2020, Plaintiff awoke to find that his UA had failed in his sleep (*Id*. at 5.) Plaintiff cleaned the bed and floor, put on dry clothes, and used the intercom to report the incident to ACDF deputies. (*Id*.) Plaintiff was told he would have to wait for SHP staff to come on duty. (*Id*.) Plaintiff had still not received a new UA by the time Deputy Brisk was serving breakfast, so Plaintiff told Deputy Brisk of his need. (*Id*.) The same morning, Plaintiff also told Deputy Perry of the situation. (*Id*.) By this point, Plaintiff's clothes were wet again, and urine was puddled on the floor and seeping under the door into the common area. (*Id*.) Deputy Brisk came by Plaintiff's cell and, noticing the urine on the floor, ordered Plaintiff to clean it up. (*Id*.) Plaintiff, who was sitting in his wheelchair near the door, refused and was maced by Deputy Brisk. (*Id*.) Afterwards, Plaintiff refused a shower, stating that it only "exa[c]erbates the chemical spray." (*Id*.) Sergeant Hartsfield gave Plaintiff another set of clean clothes and left (*Id*.) When a nurse was passing out medications, she told Plaintiff she was not aware that Plaintiff needed a new UA. (*Id*. at 6.) About an hour after Plaintiff spoke to the nurse, Deputy Perry brought Plaintiff a new UA. (*Id*.)

Plaintiff maintains that a similar situation occurred in March 2021. (*Id*.) On that occasion, Plaintiff's UA failed and urine leaked onto the floor. (*Id*.) Deputy Perry ordered Plaintiff to clean the area, and Plaintiff refused to do so until the leaking was stopped by application of a new UA. (*Id*.) Deputy Perry maced Plaintiff and removed everything from Plaintiff's cell for three days. (*Id*.) When Plaintiff's property was returned, his calendar and notes were missing. (*Id*.) Also in March 2021, Plaintiff was given a "mis-cut UA" that Nurse Hoffner refused to replace, instead telling Plaintiff to "make it work." (*Id*.)

3

On December 27, 2020, Nurse Denaikis gave Plaintiff Ibuprofen and an antibiotic for an infected tooth. (*Id.*) Nurse Denaikis asked Plaintiff to take a drink of water, and Plaintiff advised her that he had already swallowed the pills and showed her the inside of his mouth. (*Id.*) As she walked away, Nurse Denaikis told Plaintiff that she would stop treating Plaintiff's infection because he did not drink water. (*Id.*) The next day, Nurse Artz replied to Plaintiff's grievance about the incident stating that it was SHP policy to stop medications if no water was taken with the medication. (*Id.* at 6–7.)

On February 2, 2021, Plaintiff asked officers for a new UA just before dinner. (*Id.* at 7.) Because Plaintiff was limited to one UA per week, however, he did not receive a new UA until February 4, 2021. (*Id.*)

Plaintiff asks this Court to order (1) Defendants to compensate him monetarily, (2) the implementation of policy changes to address inmate medical needs; and (3) that ACDF be required to provide twenty-four-hour healthcare. (*Id.* at 6.)

### III. DISCUSSION

#### A. Property

To the extent Plaintiff seeks to hold Deputy Perry liable for any loss or misplacement of Plaintiff's personal property, any potential remedy available to Plaintiff lies in State, not Federal, law. The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a State employee randomly deprives an individual of property, provided that the State makes available a meaningful post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Plaintiff has not pled that Tennessee's post-deprivation procedures are inadequate for redressing the alleged wrong as is necessary to sustain his § 1983

claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Additionally, the Court notes that Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing Tenn. Code. Ann. §§ 29-30-101, 29-30-201). Plaintiff has not shown that these State remedies are inadequate, and therefore has not stated a claim that would entitle him to relief under § 1983 for the loss of his personal property. This claim will be **DISMISSED**.

### B. Medical Care

Plaintiff also alleges that he has been denied medication and replacement of UA devices in violation of his constitutional right to adequate medical treatment. It is well settled that the Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of adequate medical care to a prisoner can violate the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

5

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

        **1.    Medication**

Plaintiff contends that Nurse Denaikis threatened to (and presumably did) stop Plaintiff's treatment for an infected tooth because he refused to drink water with his medication, and that Nurse Artz essentially affirmed that decision in her grievance response.

The Court first notes that Nurse Artz cannot be held liable under § 1983 based solely on her grievance response in this case. *See, e.g., Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983). Rather, to incur any liability, Nurse Artz must have had some personal participation or acquiescence to the allegedly offensive conduct. *See id*. (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)); *see also Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (providing that "[e]ach defendant's liability must be assessed individually based on his own actions" (citation omitted)); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983). Plaintiff has alleged no such facts against Nurse Artz.

Regardless, to recover compensatory and punitive damages under the PLRA, it is not enough to establish an Eighth Amendment violation. A prisoner must also establish a "physical injury," meaning an injury that is more than *de minimis*. *Pierre v. Padgett*, No. 18-12276, 2020 WL 1650656, at *4 (11th Cir. Apr. 3, 2020); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be

6

significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward."); *see also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]"). Here, Plaintiff has not alleged that he suffered any injury as a result of the presumed discontinuation of treatment, much less one that is more than *de minimis*. Therefore, Plaintiff's allegations against Defendants Denaikis and Artz fail to state a constitutional claim, and Plaintiff's claim against these Defendants regarding the denial of medication will be **DISMISSED**.

### 2. UA Device

The Court next considers Plaintiff's allegation that Defendants have denied him access to medically necessary UA devices. Plaintiff's only UA-related allegation against Defendants Hartsfield, Artz, and Hison is that these Defendants accused Plaintiff of failing to properly maintain his UA devices. Plaintiff has not presented any facts that these Defendants actually denied him medical treatment, and therefore, his allegations against these Defendants fail to state a cognizable § 1983 claim for the denial of medical care. *See, e.g.*, *Twombly*, 550 U.S. at 555, 570 (finding allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery do not state a plausible claim for relief); *Binay*, 601 F.3d at 650. Accordingly, Defendants Hartsfield, Artz, and Hison will be **DISMISSED**.

Plaintiff also alleges that Deputies Perry and Brisk ignored his requests for a new UA device and failed to inform SHP staff of his need, and that Nurses Lawson and Hoffner were subjectively aware of Plaintiff's need for additional or more sufficient UA devices and failed to provide them. Plaintiff additionally maintains that his supply of UAs is regulated through SHP policy rather than need, and that ACDF's decision not to staff medical personnel from 10:00 p.m.

7

Case 3:21-cv-00133-TRM-DCP   Document 7   Filed 05/12/21   Page 7 of 10   PageID #: 40

through 7:00 a.m. has caused him to be denied constitutionally adequate care. Therefore, the Court will allow Plaintiff's Eighth Amendment claim for the denial of medical treatment to proceed as to these Defendants.

ACDF, however, is a building, not a "person" subject to § 1983 liability. *See Cage v. Kent Cnty. Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983"). Nevertheless, the Court finds that Plaintiff may be able to state a claim against Anderson County, the municipality that controls ACDF. *See Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from implementation of its official policies or established customs). Accordingly, the Clerk will be **DIRECTED** to terminate ACDF and substitute Anderson County as a Defendant.

### C. Excessive Force

Plaintiff next alleges that Deputies Perry and Brisk maced him on two separate occasions. The Court considers whether these allegations state a plausible claim for excessive force. In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry containing a subjective and an objective component: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e. the subjective component; and (2) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

Here, Plaintiff concedes he was maced after he refused to comply with orders to clean up his cell, but there is no suggestion in the amended complaint that he was in any way physically combative or threatening at the time. Accepting Plaintiff's allegations as true, the Court finds the use of mace under those circumstances states a plausible claim for excessive force against Defendants Perry and Brisk. Therefore, the Court will allow an excessive force claim against these Defendants to proceed.

### III. CONCLUSION

1. The Clerk is **DIRECTED** to terminate the Anderson County Detention Facility and add Anderson County as a Defendant;

2. Plaintiff's claim for the denial of medical care will **PROCEED** against Defendants SHP, Anderson County, Perry, Brisk, Hoffner, and Lawson;

3. Plaintiff's claim for excessive force will **PROCEED** against Defendants Perry and Brisk;

4. The Clerk is hereby **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants SHP, Anderson County, Perry, Brisk, Hoffner, and Lawson;

5. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service;

6. Service on Defendants shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

7. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required will result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

8. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default against that Defendant;

9. All remaining claims and Defendants are **DISMISSED**; and

10. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**